UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNION BENEFICA MEXICANA, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
|      v. | )      CAUSE NO. 2:11-CV-482 JD |
| | ) |
| STATE OF INDIANA, *et alia*, | ) |
| | ) |
|      Defendants. | ) |

## <u>OPINION AND ORDER</u>

Plaintiff Union Benefica Mexicana sued various state officials following the passage of "Senate Bill 590," a piece of legislation designed to regulate some aspects of the employment of illegal aliens in Indiana. The named defendants responded separately. A group consisting of the State of Indiana itself and several high-ranking officials moved to dismiss the complaint on justiciability and merits grounds, and, in two additional motions, three county sheriffs moved to dismiss on standing and/or ripeness grounds. Additional live motions include the plaintiff's motion for a preliminary injunction (stayed by agreement of the parties pending resolution of the motions to dismiss), and the defendants' motion to strike certain exhibits attached to that filing. This order resolves the three outstanding motions to dismiss. [DE 68; DE 71; DE 75]. Each is granted, with the end result that the case is dismissed without prejudice.

## <u>BACKGROUND</u>[1]

On April 29, 2011, the Indiana Legislature enacted Senate Bill No. 590 ("SB 590"), a

---

[1] The record is cited in the following format: ["Docket Entry Number" at "page or paragraph number within docket entry"].

comprehensive piece of legislation establishing state laws covering the enforcement of federal immigration regulations, the determination of the citizenship or immigration status of individuals, and related criminal matters. *See* S.B. 590, First Regular Session 117th Gen. Ass. (2011) (digest of introduced bill). SB 590 went into effect on July 1, 2011. At issue in this case are only two provisions of the bill, codified at IND. CODE §§ 22-4-39.5 (titled "reimbursements by employers of unauthorized aliens") and 22-5-6 (titled "completion of federal attestation"). The plaintiff, Union Benefica Mexicana ("UBM"), believes §§22-4-39.5 and 22-5-6 are unconstitutional under the Fourth and Fourteenth Amendments, as well as the Supremacy Clause and Contracts Clause of the United States Constitution. [DE 1 ¶ 4].

UBM is a non-profit membership organization based in East Chicago, Indiana, whose mission is to provide cultural, educational, and health programs to the Hispanic community and others in Northwest Indiana. [DE 1 ¶ 9]. The members of UBM include American citizens, legal permanent residents, and undocumented individuals, as well as business owners and employees. [DE 1 ¶ 12]. On December 20, 2011, UBM sued the State of Indiana, as well as then-Governor Mitch Daniels; Indiana Attorney General Greg Zoeller; Lake County Prosecutor Bernard Carter; Porter County Prosecutor Brian Gensel; LaPorte County Prosecutor Bob Szilagyi; Lake County Sheriff John Buncich; Porter County Sheriff David Lain; and LaPorte County Sheriff Michael Mollenhaur. Each of the individual defendants is sued in their official capacity. On June 6, 2012, Magistrate Judge Rodovich entered an order staying all proceedings in this case pending the resolution of *Arizona v. United States*, 132 S.Ct. 2492 (2012), a Supreme Court case deciding potentially related constitutional challenges to an Arizona immigration law. The stay was lifted [DE 66] on August 14, 2012, by which time UBM had moved for a preliminary injunction. [DE 64].

On August 30, 2012, defendant Lain moved to dismiss the complaint against him. [DE 68]. On August 31, 2012, defendants the State of Indiana, Daniels, Zoeller, Carter, Gensel, and Szilagyi (the "State Defendants") filed a separate motion to dismiss. [DE 71]. The State Defendants also moved to strike certain evidence in support of UBM's motion for a preliminary injunction. [DE 74]. Finally, and also on August 31, 2012, defendants Buncich and Mollenhaur (in conjunction with defendant Lain, the "County Sheriffs") moved to dismiss the complaint. [DE 75]. Each motion was briefed in full, and on October 4, 2012, this court conferred with counsel via telephonic conference. All parties agreed that the court would first rule on the pending motions to dismiss before addressing the motion for preliminary injunction. [DE 83]. This order resolves the motions to dismiss.

## DISCUSSION

The issues raised by the defendants fall into two general categories. First, a variety of challenges have been levied to the justiciability of this case, or to the court's ability to hear it as a case or controversy within its Article III jurisdiction. Second, a challenge has been made to the basic sufficiency of the complaint under the federal pleading standard laid down in *Ashcroft v. Iqbal*. As it must, the court begins with the justiciability issues before turning to an assessment of whether the complaint adequately states a claim.

With respect to justiciability, the State Defendants have attacked the complaint as: (1) failing to sufficiently plead the applicability of an exception to the Eleventh Amendment bar on suits against states, state officials, or state agencies; (2) barred by the Tax Injunction Act, to the extent that the suit challenges IND. CODE § 22-4-39.5 (governing reimbursements of workmen's compensation funds to the State of Indiana by employers who disburse those funds to unauthorized aliens); and (3) failing to sufficiently plead Article III standing to sue. [DE 71]. The County Sheriffs

attack the portion of the complaint directed against them as failing to plead Article III standing to sue, and in a related vein, as stating an unripe cause of action. [DE 68; DE 75].

In summary, the Court finds that UBM has indeed failed to sufficiently plead applicability of the *Ex Parte Young* exception to the Eleventh Amendment doctrine of sovereign immunity with respect to *any* defendant for that portion of its complaint addressing § 22-4-39.5. It has, however, pleaded its way into the exception with respect to the County Sheriffs and the enforcement of § 22-5-6. Of its three claims concerning that section – based on Supremacy Clause preemption, Fourteenth Amendment void-for-vagueness doctrine, and the Fourth Amendment bar on unreasonable searches and seizures – UBM has not sufficiently pled standing to pursue any of them at this time. Since these conclusions dispose of the case in its entirety and warrant a dismissal without prejudice, there is no need for the Court to address the remaining issues. The following discussion sections contain the rationale underlying the court's conclusions.

## I.      The Eleventh Amendment

The State Defendants (the State of Indiana, the Governor, the Attorney General, and the County Prosecutors) ask that the court dismiss them from the case pursuant to the Eleventh Amendment. The Eleventh Amendment to the United States Constitution forbids suits by private parties against a State or its agencies without the State's consent. *See Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) ("[e]xpressly applying to suits in equity as well as at law, the [Eleventh] Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State"); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The text of the amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although any such prohibition is absent from the terms of the amendment, the immunity concept has been extended to bar suits brought against a state by its own citizens, as well. *See Hans v. Louisiana*, 134 U.S. 1 (1890). "If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Indiana Prot. and Advocacy Servs. v. Indiana Fam. and Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

The Supreme Court created a limited exception to the Eleventh Amendment in *Ex Parte Young*, 209 U.S. 123, 159–60 (1908). That exception allows state officials to be sued for injunctive relief for violations of federal law. *See Va. Office for Prot. & Advocacy v. Stewart*, ___ U.S. ___, 131 S.Ct. 1632, 1639, 179 L.Ed.2d 675 (2011); *Council 31 of the Am. Fed'n of State, Cnty., and Mun. Emps., AFL–CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). The justification is that when a state official violates the federal Constitution the official acts outside the scope of his or her authority and is no longer entitled to the state's immunity from suit. *Ex Parte Young*, 209 U.S. at 155-56. All of the named defendants in this case are "a state, state agencies, or state officials acting in their official capacities[,]" 603 F.3d at 370, so the question with respect to the Eleventh Amendment is whether UBM has successfully pled the applicability of the *Ex Parte Young* exception.

### A.    Standard of Review

The court notes that although the State Defendants filed their motion to dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) (governing challenges to subject matter jurisdiction) and 12(b)(6)

(governing challenges to the legal sufficiency of the complaint), it appears that Rule 12(b)(6) is the more technically appropriate pathway to resolution of questions of sovereign immunity:

> Notwithstanding some earlier statements to the contrary by many courts, it is now reasonably clear that the Eleventh Amendment does not actually defeat subject matter jurisdiction in the federal courts. The Supreme Court has denied having reached a firm conclusion on the subject, *see Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 391 (1998) ("a question we have not decided"), but the Court has treated the defense as one that may be waived by, for example, removing a case from state court to federal court. *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 619-20 (2002); *see also Higgins v. Mississippi*, 217 F.3d 951, 953-54 (7th Cir. 2000) (State's failure to raise Eleventh Amendment could be treated as waiver, though court could raise issue on its own). Thus, the Eleventh Amendment may support dismissal on the merits for failure to state a claim upon which relief can be granted. *E.g., Berry v. Ivy Tech State College*, 2003 WL 1563862, at *2 (S.D.Ind. Jan. 15, 2003).

*Turner v. State of Indiana Teachers' Ret. Fund*, No. 1L07-CV-1637, 2008 WL 2324114 at *1 (S.D.Ind. June 5, 2008); *see also Indiana Protection and Advocacy Servs.*, 603 F.3d at 370 ("The Eleventh Amendment is unusual in that it does not strictly involve subject matter jurisdiction and is thus waivable"). Functionally, it makes little difference, as the same deferential standards apply. *See Martin v. Indiana*, No. 1:12-CV-69, 2013 WL 1332165 (N.D.Ind. Mar. 29, 2013) ("as to both the Rule 12(b)(1) and Rule 12(b)(6) arguments defendants make, the court applies the same standard, accepting the facts alleged by [the plaintiff] in his complaint as true and drawing all reasonable inferences therefrom in his favor") (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009); *Palay v. United States*, 349 F.3d 418, 424 (7th Cir. 2003)).

### B.    The State of Indiana

The State Defendants argue, first, that the State of Indiana itself must be dismissed from the case as a defendant, pursuant to the Eleventh Amendment. [DE 72 at 4]. UBM has not even tried to argue otherwise. To the contrary, UBM acknowledged that it "plan[ned] to amend [its] complaint

to drop the State of Indiana and Governor Daniels as parties." [DE 79 at 6]. That has not yet occurred, but the failure to defend is dispositive. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011) (forfeiture of claim occurs where the "litigant effectively abandons the litigation by not responding to the alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank*, 624 F.3d 461, 466 (7th Cir. 2010) (finding arguments to be waived because the plaintiff "largely failed to grapple with the defendant's arguments); *Walsh v. Arrow Fin. Servs.*, 2012 WL 255802, at *3 (N.D. Ill. Jan. 27, 2012) (dismissing plaintiff's claim with prejudice after she failed to respond to motion to dismiss). Even if it were not, the Court agrees with the Defendants as a matter of law. UBM cannot sue the State of Indiana itself under any circumstances without its consent, and the State is therefore dismissed from this case.

### C.    The Remaining State Defendants

The State Defendants also argue the Eleventh Amendment impropriety of a suit against the Governor, the Attorney General, or the County Prosecutor defendants on the facts as pleaded in the complaint. [DE 72 at 4-5]. They note that the only factual allegation made against the Governor is that he signed the bill into law; that no factual allegations are made at all concerning the Attorney General; and that, since it is the Department of Workforce Development which is actually entrusted with enforcement power under Indiana Code §§ 22-4-39.5, it is improper to bring a challenge to that particular section against the remaining named State Defendants, who are not. [DE 72 at 4-5]. In response, UBM argues in general terms that it need only show "some connection" between an official and the challenged action in order to abrogate sovereign immunity and proceed against a state official within the *Ex Parte Young* exception. [DE 79 at 4, 6-7]. The court notes that UBM is technically correct about the legal standard. *See Entertainment Software Ass'n v. Blagojevich*, 469

F.3d 641, 645 (7th Cir. 2006) (citing *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005) ("Under *Ex parte Young*, the state officer against whom a suit is brought must have some connection with the enforcement of the act . . . [i]t is not necessary that the officer's enforcement duties be noted in the act.") (internal quotation marks and citation omitted); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–20 (9th Cir. 2004); *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006)). But a plaintiff must still show "some connection" to the particular law being challenged, not just to "laws," or to the enforcement thereof, in general.

Moreover, this issue involves considerable conceptual overlap with the inquiry into UBM's standing to sue the State Defendants, due to the similarity between the "some connection" test and the traceability inquiry essential to a determination of standing. The parties' briefs shift from one doctrine to the other. In the past, this district has simplified the inquiry as follows. First, the court observes that UBM's complaint clearly seeks only declaratory and injunctive relief. That means, at least in theory, that UBM does have access to the *Ex Parte Young* exception, which holds that a " private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law." *Ameritech Corp. v. McCann*, 297 F.3d 582, 585–86 (7th Cir. 2002) (quoting *Ex Parte Young*, 209 U.S. at 123). "The question then becomes who is the right state official to name as a defendant, and do we need more than one to restrain the State of Indiana from doing whatever this court determines would violate the federal constitution (if anything)?" *Sweeney v. Daniels*, No. 2:12-CV-81, 2013 WL 209047 at *2 (N.D. Ind. Jan. 17, 2013). "Under *Ex Parte Young*, plaintiffs should name a state official who bears 'legal responsibility for the flaws they perceive in the system' and not one from whom they 'could not ask anything . . . that could

conceivably help their cause.'" *Id.* at \*3 (quoting *Hearne v. Bd. of Educ.*, 185 F.3d 770, 777 (7th Cir. 1999)). These are the standards the court looks to apply.

### 1.   *The Governor*

In both *Hearne* and *Sweeney*, the Governor was not a proper defendant because he had no role in the enforcement of the challenged statutes and no power to nullify the enacted legislation. 2013 WL 209047 at \*3. That is also the case here, and a suit against the Governor is legally inappropriate. UBM admits as much [DE 79 at 6], and the suit against the Governor is accordingly dismissed. *See, e.g., Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("[t]he mere fact that a governor is under a general duty to enforce state law does not make him a proper defendant in every action attacking the constitutionality of a state statute."). The remaining State Defendants consist of the Attorney General and the LaPorte, Porter, and Lake County Prosecutors.

### 2.   *The Attorney General*

Relying on Indiana Code § 4-6-2-1,[2] UBM argues that the requisite connection exists between the Attorney General and the challenged law based on the general duties attendant to the office. [DE 79 at 4]. The problem with this argument is that the facts supporting it appear nowhere in the complaint. In fact, aside from naming the Attorney General as a party, neither the office nor the individual then holding it is mentioned anywhere in the body of the complaint at all. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly

---

[2]    Section 4-6-2-1 reads, in relevant part, "The attorney general shall prosecute and defend all suits instituted by or against the state of Indiana . . . and he shall be required to attend to the interests of the state in all suits, actions or claims in which the state is or may become interested in the Supreme Court of this state."

dismissed." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). The State Defendants have challenged the sufficiency of the complaint through a motion to dismiss, and, with respect to the Attorney General, the complaint is facially insufficient. It is therefore dismissed, in relevant part.

3.      *The County Prosecutors and County Sheriffs*

That leaves the County Prosecutors and County Sheriffs. As mentioned, "[P]laintiffs should name a state official who bears 'legal responsibility for the flaws they perceive in the system' and not one from whom they 'could not ask anything . . . that could conceivably help their cause.'" *Sweeney*, 2013 WL 209047 at *3 (quoting *Hearne*, 185 F.3d at 777). In its complaint, UBM alleged that the County Prosecutors, by virtue of their positions, are "responsible for the enforcement of SB 590 within [their] county." DE 1 ¶¶ 16, 18, 20]. Unfortunately, they don't explain how. True, at this stage the court is bound to "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citing *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010) (internal quotation marks omitted)). But the court also begins its analysis "by identifying pleadings that, because they are no more than conclusions, are *not* entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (emphasis added). This includes legal conclusions couched as factual allegations, *see Bonte*, 624 F.3d at 465, as well as "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).

UBM's assertion that the County Prosecutors are responsible for the enforcement of SB 590 is not entitled to the assumption of truth because it is not a "well-pleaded" factual allegation. To the

contrary, it is "merely conclusory." Moreover, it is essentially a legal conclusion, and it does not point to any foundation in the actual law at issue. In the Eleventh Amendment context, it is not enough to plead a mere general obligation to enforce the law. *See Ex Parte Young*, 209 U.S. at 157. Consistent with that foundational case, a suit cannot be brought against state officers to test the constitutionality of a statute merely "because they were law officers of the state" who were "in a general sense, charged with the execution of all its laws" or "might represent the state in litigation involving the enforcement of its statutes[;] the court should look instead for a "special relation to the particular statute alleged to be unconstitutional." Again, the complaint describes none.

Moreover, based on the terms of the law itself, it does not appear that the County Prosecutors play *any* role in enforcing the challenged provisions of SB 590. The Department of Workforce Development is explicitly tasked with enforcing IND. CODE § 22-4-39.5 ,[3] and that provision affords no role to the County Prosecutors. Section 22-5-6, on the other hand, contains no "enforcement" mechanism, in the usual sense, at all. The "enforcement" provision simply instructs a "law enforcement officer" or "any other entity authorized to enforce the employment laws of Indiana" to notify the proper *federal* authorities when they have probable cause to believe a violation has occurred. IND. CODE § 22-5-6-4. UBM has made no attempt to explain how either provision implicates the County Prosecutors. *See Bonte*, 624 F.3d at 466 (finding arguments to be waived because the plaintiff "largely failed to grapple with the defendant's arguments").

So, there appears to be no penalty feature in either of the challenged code sections which could support a prosecution or other enforcement action within the power or discretion of the County

---

[3]     *See* IND. CODE §§ 22-4-39.5-3(a) ("The **department** [of workforce development] may file a civil action to obtain reimbursement . . ." (emphasis added)); 22-4-39.5-5 ("The **department** has the power to . . ." (emphasis added)).

11

Prosecutors. The County Prosecutors therefore are not proper parties to this action, because relief against them would be meaningless; an injunction against enforcement by a state officer with no authority to enforce is not helpful to the plaintiff's cause. *See Sweeney*, 2013 WL 209047 at *3. For that matter, UBM does not appear to have satisfied even the relatively undemanding "some connection" test with respect to these defendants, because it has not properly pleaded (or argued) some connection to *these* laws, as opposed to other generic laws of the state. *See Ex Parte Young*, 209 U.S. at 157; *Entertainment Software Ass'n*, 469 F.3d at 645. The County Prosecutors must therefore be dismissed.

In summary, whether one considers it a decision on immunity grounds or under the traceability prong of the standing analysis, the identities of the "right state official[s] to name as defendant[s]" in this case are clear, because the challenged statutory sections explicitly set out who is endowed with enforcement authority. *Sweeney*, 2013 WL 209047 at *2. A challenge to IND. CODE § 22-4-39.5 might be directed against the appropriate state official with enforcement authority at the Department of Workforce Development, and a challenge to IND. CODE § 22-5-6 might be directed against a "law enforcement officer," as defined by the statute, or at an agency with authority to enforce the employment laws of the state, such as the Department of Labor or the Department of Workforce Development. As the enforcers of the challenged provisions, these may be the persons or agencies bearing "legal responsibility" for the anticipated wrongs of which UBM complains. *Sweeney*, 2013 WL 209047 at *3. UBM did name three County Sheriffs (who do qualify as "law enforcement officers") in the complaint in conjunction with its attack on IND. CODE § 22-5-6, and those defendants have not raised an Eleventh Amendment argument. But UBM did not name any other individual with enforcement authority, and the remaining defendants must be dismissed either

12

as inadequately pleaded (the Attorney General) or improperly named (the State, the Governor, and the County Prosecutors). The State Defendants' motion to dismiss [DE 71] is therefore granted.

Finally, the court notes that UBM cannot sue the County Sheriffs to test the constitutionality of IND. CODE § 22-4-39.5 (the section governing reimbursement of employer contributions) for the same reason it cannot sue the State Defendants – it has not properly pleaded that the County Sheriffs have any connection to its enactment or enforcement, which is in reality carried out by the Department of Workforce Development. Even if it had properly pleaded a connection, this court could not credit any such allegation in light of the fact that the law itself says otherwise. A lawsuit still remains, however, pitting UBM against the County Sheriffs over the constitutionality of IND. CODE § 22-5-6 (the section instructing law enforcement officers to file a report with federal authorities when they have probable cause to believe an individual is working as a day laborer without completing the required attestation). As mentioned, the County Sheriffs do qualify as law enforcement officers within the meaning of the statute. But another hurdle still remains: the County Sheriffs have challenged UBM's Article III standing to bring its claims before the court. [DE 68; DE 75].

## II.    Article III Standing

Standing is "the 'irreducible constitutional minimum' required to bring a case in federal court." *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606 (7th Cir. 2013) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (in turn quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))). Standing arises under the "case or controversy" requirement, found in U.S. CONST. art. III, § 2, and serves to identify those disputes which are appropriately resolved through the judicial process. *Id.* (internal citations and quotation marks

omitted). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Defenders of Wildlife*, 504 U.S. at 561). Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision. *Id*.

### A.    Standard of Review

If standing is challenged as a factual matter, the plaintiff must come forward with "competent proof" that standing exists. *Lee*, 330 F.3d at 468. Furthermore, "[a] plaintiff 'must demonstrate standing separately for each form of relief sought.'" *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 185 (2000)). Still, this case is only at the pleading stage. As in other contexts, when ruling on a motion to dismiss for want of standing, the district court must accept as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor. *Id*. (citing *Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)); *see also Defenders of Wildlife*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990))).

UBM claims standing based on three injuries: (1) that SB 590 has "forced UBM to divert scarce resources from critical programs in order to educate and assist individuals affected by SB

590, and will continue to do so in the future" [DE 1 ¶ 13]; (2) that UBM's "mission and organizational goals will . . . be negatively impacted by SB 590 because the organization will have a more difficult time encouraging members to partake in UBM's various activities" [DE 1 ¶ 14]; and (3) that "UBM also fears that its current and prospective members will be deterred from seeking immigration relief because local law enforcement will continue to stop and detain them, notwithstanding their application for relief." [DE 1 ¶ 14].[4] The first two potential injuries pleaded are effects of the Act on UBM itself, and thus represent attempts by UBM to bring suit in its own right. The third is an attempt to claim organizational, or associational, standing as a result of the effects of the Act on the members of UBM. These two forms of injury are subject to different tests.

**B.      UBM's Attempt to Plead Standing in its Own Right**

UBM first attempts to plead standing in its own right, based on the two alleged direct injuries not dependent on the effect of the law on UBM's members. "To bring suit in its own right, an organization must itself satisfy the requirements of standing." *Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008)). UBM has failed to do so with respect to its Supremacy Clause and Fourteenth Amendment claims against § 22-5-6.

**1.      *Injury in Fact***

The first requirement for standing is that the plaintiff demonstrate an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or

---

[4]      UBM does not claim that it employs undocumented workers and will therefore be subject to penalties or an interruption in its workforce.

imminent, not conjectural or hypothetical. *Lee*, 330 F.3d at 468. Of course, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)); *see also Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974); *Pierce v. Society of Sisters*, 268 U.S. 510, 526 (1925). But "a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997); *see also Defenders of Wildlife*, 504 U.S. at 560-61 (to have standing, the plaintiff must have suffered a "particularized" injury, which means that "the injury must affect the plaintiff in a personal and individual way"). Additionally, the alleged injury must be "legally and judicially cognizable." *Id.* "This requires, among other things . . . that the dispute is 'traditionally thought to be capable of resolution through the judicial process[.]'" *Id.* (quoting *Defenders of Wildlife*, 504 U.S. at 560; *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).

The two direct injuries pleaded by UBM are (1) that SB 590 has "forced UBM to divert scarce resources from critical programs in order to educate and assist individuals affected by SB 590, and will continue to do so in the future" [DE 1 ¶ 13]; and (2) that UBM's "mission and organizational goals will . . . be negatively impacted by SB 590 because the organization will have a more difficult time encouraging members to partake in UBM's various activities[.]" [DE 1 ¶ 14]. The harms alleged by UBM are a result of the mere enactment, or existence, of SB 590, and not of its actual or anticipated enforcement against UBM as a violator of the statute. UBM seeks a declaratory judgment that IND. CODE § 22-5-6 is unconstitutional and an injunction against future potential enforcement of the Act. "Declaratory judgments [and other types of prospective relief] are

16

typically sought before a completed 'injury-in-fact' has occurred . . . but [they still] must be limited to the resolution of an 'actual controversy.'" *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing *Pic–A–State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 (3rd Cir.), cert. denied, 517 U.S. 1246 (1996); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). Therefore, "[w]hen seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Id*. (citing *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995), cert. denied, 516 U.S. 1084 (1996)).

Plaintiffs seeking pre-enforcement review often successfully establish standing based on "cost of compliance" injuries, *see 520 Michigan Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2006) (collecting cases), in that "pre-enforcement review is usually granted under the Declaratory Judgment Act when a statute 'imposes costly, self-executing compliance burdens or if it chills protected First Amendment activity.'" *Magaw*, 132 F.3d at 279 (citing *Minnesota Citizens Concerned for Life v. FEC*, 113 F.3d 129, 132 (8th Cir. 1997)). UBM's claimed injuries do not match up perfectly with the "costs of compliance" concept, since no portion of the challenged statute seems to require any sort of "compliance" from UBM at all. Nor do they show that SB 590 chills protected First Amendment activity. But the Seventh Circuit has previously found sufficient injury-in-fact to support a pre-enforcement suit based on a loosely associated "diversion of resources" claim similar to the one made by UBM. *See Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (finding a sufficient injury was pleaded when a "new law injure[d] the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote."). For that

matter, so has the Supreme Court. In *Coleman*, 455 U.S. at 379, the plaintiff claimed as an injury that it "ha[d] been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services," and that it "had to devote significant resources to identify and counteract the defendant[s'] racially discriminatory steering practices." 455 U.S. at 1124. The Court held that "[s]uch concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests," 455 U.S. at 1124 (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)) and concluded that a sufficient injury had been pleaded.

Given the precedents, this court is satisfied that – if true – UBM's claims regarding the diversion of valuable resources and the impairment of its performance of its mission as a result of the passage of SB 590 make out a sufficient injury-in-fact to satisfy the first prong of the standing test. The diversion, or depletion, of resources is a real economic harm, and "[t]he fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury." *Crawford*, 472 F.3d at 951 (citing *Laidlaw*, 528 U.S. at 180–84; *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 690 n. 14 (1973); *Devine*, 433 F.3d at 962–63; *Baur v. Veneman*, 352 F.3d 625, 633–34 (2d Cir. 2003)). Moreover, at this stage, UBM need not prove that its claims are true. The well-pleaded allegations of the complaint are to be taken at face value. *Lee*, 330 F.3d at 468. The remaining questions before the court are causation – also called traceability – and redressability.

2.    *Traceability*

The second requirement of standing is a causal relationship between the alleged injury and

the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant. *Lee*, 330 F.3d at 468. As with the other elements of standing, UBM, as the plaintiff, bears the burden of establishing that causation exists. *Lee*, 330 F.3d at 468. Notably, for the causation requirement to be met, the injury must not be "th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).

That rule presents a problem for UBM. At this point, the case has been narrowed down to a suit between UBM and the County Sheriffs over the constitutionality of IND. CODE § 22-5-6. Accordingly, the question is whether the direct injury successfully pleaded by UBM – specifically, the diversion of resources towards educating its members about the effects of the Act – can be traced to the County Sheriff's discharge of their duties under that section of the Act. UBM does very little to draw any such connection; the only applicable portion of the complaint is Paragraph 47, wherein UBM claims "Defendants are obligated to enforce SB 590 unless it is found to be illegal." [DE 1]. But the use of the term "enforce" in this case, to describe the County Sheriffs' duty, is misleading. The only duty the County Sheriffs have under IND. CODE § 22-5-6 is to file a report with federal authorities when they have probable cause to believe a violation occurs; there is no grant of arrest authority, of independent investigative powers, or of *any* other authority or discretion to take action actually impacting the rights or liberties of the individuals whom they suspect of working illegally. *See* § 22-5-6-4. The question of whether to "enforce" the registration requirement is therefore entirely within the discretion of *federal* immigration authorities; if the federal authorities choose not to pursue any "leads" submitted by local law enforcement, then no "enforcement" ever occurs at all. That reality appears to be undisputed, and in any case it is indisputable; it is apparent from the face

19

of the statutory text. This seems to be a perfect example of a situation in which the action (or inaction) of an "independent third party" breaks the chain of causation between injury and challenged actor.

To be sure, the presence of an independent third party does not automatically defeat causation for standing purposes. But it does elevate the burden on UBM. "When causation hinges on independent third parties, the plaintiff has the burden of showing that the third parties' choices 'have been or will be made in such a manner as to produce causation and permit redressability of injury.'" *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 666-67 (6th Cir. 2007) (quoting *Lujan*, 504 U.S. at 561); *see also Warth v. Seldin*, 422 U.S. 490, 504-05 (1975) (fact that an injury is indirect does not necessarily defeat standing, "[b]ut it may make it substantially more difficult . . . to establish that, in fact, the asserted injury was the consequence of the defendants' actions."). There is no allegation, anywhere in the complaint, asserting that federal immigration authorities will follow through on Indiana law enforcement officers' reports in a way that will have any impact on UBM's members. True, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Nat'l Wildlife Fed'n*, 497 U.S. at 889). But this is not a situation where a general allegation exists from which this court can draw the necessary specific inferences. This is a situation where a necessary general allegation – one alleging that the obviously impactful independent third party which is the federal government will enforce the law in the way seemingly anticipated by UBM – is *entirely* absent. The court cannot draw specific inferences from a void. *See Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008) ("If 'speculative inferences are necessary

to connect [a plaintiff's] injury to the challenged action,' [the plaintiff's] burden has not been met." (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005))).

In light of the foregoing, UBM has not adequately pled standing to sue the County Sheriffs over its diversion of resources and "impairment of mission" injuries. The complaint simply does not adequately allege a causal link between those injuries and the extremely limited "enforcement" – if one can call it that – role played by the County Sheriffs under the statutory scheme. Federal immigration authorities are undeniably an "independent third party" whose decisions dictate whether or not the County Sheriffs' background activity will actually have any consequences which UBM's members will feel, or about which they could possibly need to be educated. That does not categorically, or instantly, defeat standing, but it does mean that UBM had a burden to show that the actions of federal immigration authorities will occur in such a way as to allow traceability, and UBM did not even attempt to do so. Without traceability, there is no need to address redressability. Standing is lacking, and UBM's direct injury claims must be dismissed.

### C.    Injury to Members as Basis for Associational Standing

As previously mentioned, UBM's complaint made three claims with respect to § 22-5-6 : (1) that it is preempted under the Supremacy Clause; (2) that it is void for vagueness under the Due Process Clause; and (3) that the enforcement of the section will violate the Fourth Amendment right of UBM's members to be free from unreasonable searches and seizures. The first two claims were founded on UBM's standing to sue in its own right, because they logically correlated to the direct injuries pled. Those claims have been dismissed due to UBM's failure to adequately plead standing to sue the County Sheriffs. UBM's Fourth Amendment claim, however, depends entirely on its assertion that its members will necessarily be unreasonably detained as a "side effect" of the

section's enforcement, and it therefore is a separate attempt to claim organizational or associational standing and requires a separate analysis.

UBM has attempted to plead associational standing to sue on behalf of its members in that "UBM . . . fears that its current and prospective members will be deterred from seeking immigration relief because local law enforcement will continue to stop and detain them, notwithstanding their application for relief." [DE 1 ¶ 14]. An organization has associational standing and may bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claims asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *Sierra Club v. Franklin Cnty. Power of Illinois, LLC*, 546 F.3d 918 (7th Cir. 2008); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The third requirement does not derive from the Constitution. Instead, it is a judicially imposed limitation, *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 556–57 (1996), which may be overridden by Congress. *Disability Rights Wisconsin, Inc. v. Walworth Cnty. Bd. Of Supervisors*, 522 F.3d 796, 801-02 (7th Cir. 2008); *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1059 (7th Cir. 1994).

UBM has no standing to pursue its Fourth Amendment claim because its members themselves would have no standing to do so at this juncture. To support standing, a plaintiff must plead an injury which is concrete and particularized; actual or imminent, not conjectural or hypothetical. *Lee*, 330 F.3d at 468. Three paragraphs of UBM's complaint explain the basis for their Fourth Amendment claim:

> 69.  Indiana Code § 22-5-6 provides that law enforcement officers shall file complaints with U.S. Immigration and Customs Enforcement if they have

22

probable cause to believe that an individual has violated this section of the law by working without proper authorization.

70. While this section does not specifically state that law enforcement officers can detain a day laborer, that will necessarily be the effect since there is no other manner in which an officer will be able to obtain the information needed to file a complaint against an individual.

71. Such a detention would be premised on the officer having probable cause of [sic] conduct that is not criminal in nature, in violation of the Fourth Amendment.

[DE 1 ¶¶ 69-71]. The claimed injury is entirely conjectural. It is unknown (and unknowable) when it will occur; to whom it will occur; or if it will ever even occur at all. More specifically, UBM's allegation that detention of day laborers "will necessarily be the effect since there is no other manner in which an officer will be able to obtain the information needed to file a complaint against an individual" is a "mere conclusory statement[,]" *see Iqbal*, 556 U.S. at 663, and it is foundationless and inaccurate. This seems especially so, as acknowledged by UBM, where the Sheriffs have no legal authority to detain day laborers for purposes of this law. UBM presumes, without more, that Sheriffs would engage in unauthorized and illegal detentions. Moreover, there are in fact *many* ways a law enforcement officer might acquire probable cause to believe an individual is working without completing an attestation. For example, a tip might come in, or the officer might acquire such information as part of an unrelated criminal investigation. Most importantly, the court cannot say which of these, if any, may occur, because nothing has occurred yet. This is altogether too speculative a foundation for an Article III "case or controversy."

Of course, UBM is right to note that a plaintiff need not necessarily wait for an imminent constitutional injury to be consummated before bringing suit. But, in every case, "a plaintiff must show actual present harm or a significant possibility of future harm" in order to obtain review.

*Magaw*, 132 F.3d at 279. UBM has failed to properly allege a "substantial likelihood," instead basing its complaint on pure speculation. "The purpose of the imminence requirement is 'to ensure that the alleged injury is not too speculative . . . [and] that the injury is certainly impending.'" *United States v. Met. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (quoting *Lujan*, 504 U.S. at 564 n. 2). The alleged injury to UBM's members is not "certainly impending." To the contrary, it may well never happen at all. UBM's Fourth Amendment attack on § 22-5-6 must be dismissed.

**<u>CONCLUSION</u>**

Consistent with the foregoing, UBM's complaint must be dismissed in full, and the defendants' motions to dismiss [DE 68; DE 71; DE 75] are **GRANTED**. The State of Indiana, the Governor, the Attorney General, and the three County Prosecutors are dismissed from the lawsuit as improperly sued, and UBM has not adequately pleaded standing – either direct or associational – to sue the County Sheriffs. This dismissal is the result of technical deficiencies in UBM's complaint, combined with UBM's failure to identify a proper State defendant. Those deficiencies and failures make it impossible for this court to adjudicate the case on the merits. "[W]hen a suit is dismissed . . . because the court has no power to resolve the case on the merits even if the parties are content to have it do so, it is error to make the dismissal with prejudice." *T.W. by Enk v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) (citing *Costello v. United States*, 365 U.S. 265, 285 (1961); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1277 (7th Cir. 1983); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 n. 4 (2d Cir. 1994)). Accordingly, this action is **DISMISSED WITHOUT PREJUDICE** to refiling with an adequate complaint suing proper

24

parties, and the Clerk is **INSTRUCTED** to terminate the case. Due to the termination of the case, the remaining pending motions [DE 74; DE 64] are **DISMISSED** as moot.

SO ORDERED.

ENTERED:   August 13, 2013

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court